**MICHAEL T. ASHLEY, ESQ.**
The Law Office of Thomas R. Ashley
50 Park Place, Suite 1400
Newark, NJ 07102
p. 973.623.0501
f. 973.623.0329
m@traesq.com
Attorney ID: 270032021
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FREDDIE CASTRO, JR, <br><br>    Plaintiff, <br><br>    v. <br><br>UNION CITY; DETECTIVE ALFRED SOTO, in his official and individual capacity; DETECTIVE JOSEPH CASAZZA, in his official and individual capacity; and JOHN DOES 1-10 (unidentified individuals or entities), in their official and individual capacities, <br><br>    Defendants. | **COMPLAINT AND DEMAND FOR TRIAL BY JURY** <br><br><br>*Case No.:* |

    Plaintiff FREDDIE CASTRO, JR., residing at 614 14th Street Apt 1L, Union City, County of Hudson, State of New Jersey, ("Plaintiff") by and through counsel Michael T. Ashley, Esq. hereby alleges and complains:

1

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to seek redress for the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983, pendent claims through the New Jersey Constitution, and other claim under the common law.

2. Plaintiff's right to be free from unreasonable seizures was violated when officials of the Union City Police Department ("UCPD") used excessive force against him on or about January 15, 2020, causing Plaintiff to endure permanent injuries. By reason of Defendants' use of excessive force, false arrest, and illegal seizure, Plaintiff was deprived of his rights secured by the New Jersey Constitution, the Fourth and Fourteenth Amendments of the United States Constitution as well as other rights under the common law.

3. Plaintiff seeks an award of compensatory damages, punitive damages, and attorneys' fees and costs.

**JURISDICTION AND VENUE**

4. The United States District Court for the District of New Jersey has original jurisdiction of this action under 28 U.S.C. § 1331 and 1343(a)(3), insofar as certain causes of action pleaded herein arise under the Constitution and laws of

the United States, specifically 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

5.  In addition, the United States District Court for the District of New Jersey has supplemental jurisdiction over the pendent claims pleaded herein, pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

7.  Plaintiff was at all material times a resident of Union City, Hudson County, New Jersey.

8.  Defendant UNION CITY (hereinafter "City" or "the City") is a municipal corporation and the public employer of DETECTIVE ALFRED SOTO ("Soto" herein) and DETECTIVE JOSEPH CASAZZA ("Casazza" herein) (collectively "Officer Defendants").

9.  Officer Defendants at all times in the relevant period, were duly appointed Officers of the Union City Police Department acting under color of law. Officer Defendants are being sued individually and in their official capacities.

10.  The UCPD is and was, at all times in the relevant time period, a division and/or department of the City entrusted with, among other things, enforcing federal, state and local laws and ordinances, and otherwise ensuring the safety of people and property within the jurisdictional limits of the City.

11. Defendants John Does 1-10, are presently unknown police officers, employees, agents and/or representatives of the City, and/or UCPD, and/or other yet unknown public entity, making no representation as to gender or rank, whose unlawful actions are described, referenced, and/or set forth herein.

12. The true names and shield numbers of defendants John Does 1-10 are not currently known to the plaintiff. However, they may be employees or agents of the UCPD or the City.

13. The Officer Defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and deliberate indifference to Plaintiffs' rights.

14. At all relevant times, the Officer Defendants acted in concert to assist each other in performing the various actions described herein and lending their physical presence, support, and the authority of their offices to one another.

**STATEMENT OF FACTS**

15. During the 2019-2020 academic year, Plaintiff was a student enrolled in Union City High School ("UCHS" herein).

16. On or about January 13, 2020 and January 14, 2020, there were two physical altercations among juveniles that occurred within the jurisdiction of the UCPD.

17. The reporting victim (hereinafter "victim") of these incidents was then a student at UCHS.

4

18. According to the relevant UCPD incident reports, the reporting victim told authorities that he was assaulted on two occasions by a group of individuals led by a male only known to him from passing on his walk home from school.

19. The victim was shown six photographs of persons suspected to have been in the group of assailants.

20. Of the six photographs, the victim identified four as individuals among those who had participated adversely in the two altercations.

21. The Plaintiff was not identified by the victim as participating in any assault against him on any date.

22. Thereafter, UCPD was supplied with a video of one of the assaults by a confidential informant.

23. UCPD Officer Vanderhorst was able to identify three of the aggressors from previous law enforcement contacts. None of those identified was the Plaintiff.

24. Upon information and belief, members of the UCPD came to believe that the Plaintiff was among those who attacked the victim. This belief was not supported by probable cause.

25. Officer Defendants responded to UCHS to take custody of the Plaintiff.

26. Prior to their arrival, Plaintiff had been removed from his regular classes and was placed in a detention room with approximately twelve other male and female students.

27. Plaintiff was not informed of the reason he was segregated by UCHS personnel.

28. After approximately one hour in the detention room, two individuals in civilian attire entered the classroom and inquired whether Freddie Castro was present. The men failed to identify themselves as law enforcement.

29. The Plaintiff indicated that he was Freddie Castro, Jr. at which time the unidentified men approached him and instructed him to stand up and place his hands on his desk.

30. The thus far unidentified men proceeded to search the Plaintiff in the presence of the other students.

31. The Plaintiff was patted down between his legs and his pants were pulled halfway down as to expose his undergarments.

32. Mr. Castro was then placed in handcuffs in front of all the boys and girls in the detention room before being forcibly removed from UCHS.

33. It was not until he had been placed in handcuffs by the Officer Defendants that the Plaintiff realized that they were members of law enforcement.

34. Plaintiff was subsequently transported to UCPD headquarters in the Officer Defendants' unmarked police vehicle.

35. As he was placed in the vehicle, his coat was caught in the door and torn, significantly compromising its ability to keep him warm.

36. While en-route, Plaintiff informed the Officer Defendants that he was not involved in the January 13, 2020 incident as they suspected.

37. He informed them further that on the day in question he was participating in a school mandated counseling program in Paramus, New Jersey and that UCHS maintained records of his whereabouts with respect to the same.

38. Upon arrival at UCPD headquarters, Plaintiff requested the opportunity to make a phone call to his mother and was not allowed to do so.

39. Plaintiff was placed in a holding cell for approximately one hour before being brought into another room for interrogation.

40. He explained again to the Officer Defendants that he had not been involved in any incidents they were investigating and that this could be verified by contacting either his mother or counselor.

41. At this point, the Plaintiff had not been given Miranda warnings nor had his mother been notified by any party of his arrest.

42. Subsequently, he gave the Officer Defendants his mother's phone number and they called her for the purpose of confirming his alibi.

43. Once a determination was made that the Plaintiff could not have been involved as suspected, he was released from UCPD headquarters.

44. Upon inquiring how he was to get back to UCHS, Plaintiff was advised by the Officer Defendants that he had to walk.

45. Plaintiff's immediate family was then employed by a local law enforcement agency, and he had up until this day planned to pursue a career as a police officer after graduating high school.

46. After his arrest, Plaintiff returned to UCHS for approximately one week.

47. Upon information and belief, video of his classroom arrest circulated social media and was the subject of extensive discussion and speculation amongst students at UCHS causing the Plaintiff significant emotional distress.

48. The Plaintiff felt that he had lost the respect of his teachers and that they viewed him as a criminal after his arrest.

49. The social and academic difficulties which were the predictable, actual, and proximate result of his arrest led him to abstain from further attending UCHS.

50. At the time the Plaintiff discontinued his education, he also abandoned his dream of becoming a police officer.

51. Further, he began to have panic attacks, experience profound depression, insomnia, nightmares, sleep paralysis, and other symptoms which had never occurred before his arrest.

52. The Plaintiff was diagnosed with permanent chronic Post-Traumatic Stress Disorder and Dysthymic Disorder directly resultant of his false arrest effectuated by the Officer Defendants on January 15, 2020.

### SUPPLEMENTAL FACTS CONCERNING LIABILITY

53. UCPD is the entity legally responsible for the hiring, retention, supervision, discipline, and training of employees of the UCPD, including the Officer Defendants.

54. UCPD is an administrative subdivision of the City. The City, acting through its mayor and City Commission, is the definitive policymaking authority for all officially adopted policies and procedures implemented by employees of UCPD, including the Officer Defendants.

55. The City and the UCPD have failed to properly train and/or supervise the shooter defendants and failed to provide the appropriate safeguards to prevent the violation of the rights of the Plaintiff.

56. The aforementioned failures of the City have established customs, policies, practices, procedures, and rules of the City and the UCPD, that include but are not limited to the following unconstitutional practices:

   i. Failing to properly train;
   ii. Failing to supervise police officers;
   iii. Subjecting persons to violations of their constitutionally protected rights;
   iv. Subjecting persons to the use of excessive force; and
   v. Subjecting persons to false arrest.

57. The City is on notice that there is a wide-spread and systemic pattern, custom, and practice within the UCPD to use excessive force and effectuate false arrests upon members of the public.

58. The City has been noticed of the unconstitutional conduct of its officers and employees through previous notices of intents to sue, lawsuits, internal affairs investigations, and media reports as referenced herein and otherwise.

59. The victims of said illegal conduct have in many instances either have not committed a crime or have been accused of minor offenses.

60. There is a pattern and custom of UCPD condoning illegal and unconstitutional practices within their ranks. For example:

   i. Martinez v. City of Union City et al., No. 2:21-cv-11111 (May 12, 2021): The plaintiff alleges selective enforcement of discipline and

        unconstitutional harassment and retaliation by member of the UCPD.

   ii. Bouhelel v. Union City et al., No. 2:16-cv-03549 (June 17, 2016): Without legal justification, members of the UCPD were said to have falsely arrested Mrs. Bouhelel and confined her at their headquarters without proper clothing before issuing criminal complaints without probable cause.

  iii. Abramo v. Union City et al., No. 2:16-cv-01273 (March 3, 2016): Officers of the UCPD were said to have attacked the plaintiff without provocation before unlawfully placing him under arrest.

   iv. Johnson v. Union City, et al., No. 2:12-cv-01042 (February 21, 2012): An arrest without probable cause was alleged where the UCPD failed to properly investigate a domestic dispute leading to criminal charges not supported by probable cause.

**COUNT ONE**
**False Arrest/Imprisonment**
**42 U.S.C. § 1983 &**
**New Jersey Civil Rights Act N.J.S.A. § 10:6-2 et seq.**
**(Against All Defendants)**

61. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

62. Plaintiff was detained, arrested and/or imprisoned despite a lack of probable cause and/or other satisfactory legal justification or support.

63. Defendants intentionally, wrongfully, unlawfully, maliciously and without lawful justification or cause, probable or otherwise, arrested, detained, confined and/or caused the confinement of Plaintiff.

64. Defendants' deprivation of Plaintiff's constitutional rights were the direct and proximate cause of the injuries and damages set forth herein.

65. As a result of Defendants' acts and/or omissions, Plaintiff was humiliated, disgraced, suffered damage to his reputation, permanent injury, and monetary loss and damage.

## COUNT TWO
### Illegal Search and Seizure
### 42 U.S.C. § 1983 &
### New Jersey Civil Rights Act N.J.S.A. § 10:6-2 et seq.
### (Against All Defendants)

66. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

67. Without any warrant or justification, lacking in any cause whatsoever, probable or otherwise, Defendants illegally and improperly searched, detained, arrested, and seized Plaintiff. Defendants had no legal basis to search, detain,

12

arrest, or seize Plaintiff and did so maliciously with deliberate indifference to the rights of Plaintiff.

68. Each and every action described above was undertaken in violation of the Fourth Amendment's prohibition of unreasonable searches and seizures as well as Article 1, paragraph 7 of the New Jersey State Constitution's proscription of unlawful searches and seizures.

69. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiff was humiliated, disgraced, suffered damage to his reputation, physical and mental anguish and injury and monetary loss and damage all to his great detriment.

**COUNT THREE**
**Municipal Liability**
**42 U.S.C. § 1983 &**
**New Jersey Civil Rights Act N.J.S.A. § 10:6-2 et seq.**
**(Against Union City)**

70. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. At all relevant times, Officer Defendants were the employees of the City and they were acting as their agents, servants, and employees.

72. The City and UCPD failed to use reasonable care in the selection of its employees, agents and/or servants, failed to properly train and/or supervise the Officer Defendants, and failed to provide the appropriate safeguards to prevent the

assault, false arrest, improper detention and imprisonment, and violation of the rights of Plaintiff.

73. As described hereinabove, the City has failed to meaningfully address UCPD officer's unconstitutional acts.

74. The City thus created a tacit policy, practice, and custom of permitting actions like those of the Officer Defendants to continue with impunity.

75. The City acted under color of law pursuant to an implicit policy or custom and practice whereby improper arrests and false imprisonment was permitted, tolerated, and condoned.

76. The City intentionally, knowingly, recklessly, with willful and wanton indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents, and/or servants.

77. This caused a culture where, as here, officers, such as the Officer Defendants, acted without fear of meaningful reprimand.

78. The lack of substantial supervision by the internal affairs department has created an unsafe culture that incites officers to violate the rights of civilians as they know that they will not be properly held accountable.

79. The City, therefore, directly or indirectly, and under color of law, thereby approved or ratified the unlawful, malicious, and wanton conduct of the Officer Defendants.

80. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs were humiliated, disgraced, suffered damage to his reputation, permanent mental anguish and injury, and monetary loss and other damages.

### COUNT FOUR
### Common Law Assault & Battery
### (Against Officer Defendants)

81. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if more specifically set forth herein.

82. Defendants intentionally and unlawfully touched Plaintiff without permission and/or legitimate justification.

83. Plaintiff suffered injury, harm, damage and loss as a result of said improper contact.

84. As a direct and proximate result of the assaults described herein, Plaintiff was humiliated, disgraced, suffered damage to his reputation, permanent mental anguish and injuries and monetary losses and other damages.

### COUNT FOUR
### Common Law Intentional Infliction of Emotional Distress
### (Against Officer Defendants)

85. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if more specifically set forth herein.

86. The actions and/or omissions directed by and/or on behalf of the Defendants toward the Plaintiff was extreme and outrageous.

87. Said acts and/or omissions were intentionally conducted in a manner intended to produce or cause emotional distress and/or were conducted recklessly in deliberate disregard of the high probability that emotional stress would result.

88. The previously described misconduct caused and/or resulted in emotional distress that reasonable person could be expected to endure it.

89. As a direct and proximate result of the misconduct, Plaintiff was caused to suffer physical and emotional harm as described more specifically herein.

### JURY DEMAND

90. Plaintiff demands a trial by jury in this action on each and every one of his damage claims.

WHEREFORE, the Plaintiff demands judgment against the Defendants individually and jointly and pray for relief as follows:

a. That he be compensated for violation of his constitutional rights as set forth hereinabove, loss of liberty, emotional distress, humiliation, loss of property, costs and expenses, and other damages and injuries;

b. That he be awarded punitive damages against all defendants, excluding the City;

c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated: Newark, New Jersey
       January 15, 2022

                        Respectfully submitted,

                        MICHAEL T. ASHLEY

                        _____

                        50 Park Place, Suite 1400
                        Newark, New Jersey 07102
                        973.623.0501

## **CERTIFICATION**

I certify that the matter in controversy is not the subject of any other action pending or contemplated. I further certify that I am aware of no other parties who should be joined in this matter whose identities are known to the plaintiff.

Dated: Newark, New Jersey
      January 15, 2022

                              Respectfully submitted,

                              MICHAEL T. ASHLEY

                              _____

                              50 Park Place, Suite 1400
                              Newark, New Jersey 07102
                              973.623.0501